## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ELAINE CHAO, Secretary of Labor, | § | |
| United States Department of Labor, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL CASE NO. H-06-2762 |
| | § | |
| BENITEZ DRYWALL, LLC, *et al.*, | § | |
| Defendants, | § | |
| | § | |
| v. | § | |
| | § | |
| INDUSTRIAL CORROSION | § | |
| CONTROL, Inc., | § | |
| Third-Party Defendant. | § | |

## MEMORANDUM AND ORDER

The Court has before it Third-Party Defendant Industrial Corrosion Control, Inc.'s ("ICCI") Motion to Dismiss for Lack of Jurisdiction [Doc. # 24] ("ICCI's Motion"). ICCI argues that the Court lacks personal jurisdiction over it and seeks dismissal from this case. The Motion has been briefed and is ripe for determination.[1] Having considered the parties' arguments, the evidence of record, and applicable legal authorities, the Court concludes that the Third-Party Defendant's Motion should be

---

[1]    *See* Third-Party Defendant ICCI's Memorandum Brief in Support of Motion to Dismiss for Lack of Jurisdiction [Doc. # 25] ("ICCI's Memorandum"), Defendant Benitez's Response to Third-Party Defendant ICCI's Motion to Dismiss for Lack of Jurisdiction [Doc. # 28] ("Benitez's Response"), and Third-Party Defendant ICCI's Reply [Doc. # 36] ("ICCI's Reply").

**denied**.  The Court, however, notes that the parties have not addressed the question of venue and that there is a forum selection clause in the parties' agreements[2] that may govern proper venue in this case.  Benitez and ICCI are **ordered to brief** the issue of whether the third-party action should not proceed in Mississippi in conformity with the venue selection term of their agreements.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Elaine L. Chao, Secretary of Labor, United States Department of Labor ("Secretary") originally brought suit against Defendant Benitez Drywall, LLC[3] ("Benitez") for failure to pay its employees overtime wages as required by the Fair Labor Standards Act ("FLSA").  Benitez filed a third-party complaint against ICCI alleging that ICCI and Benitez were "joint employers" and therefore should at the least share liability under FLSA [Doc. # 18] ("Third-Party Complaint").  ICCI responded with the pending Motion to Dismiss arguing lack of personal jurisdiction [Doc. # 24].

Benitez establishes that it is a Texas corporation that hires Texas workers and contracts them to other companies.  ICCI is a Mississippi corporation with its principal office located in Gulfport, Mississippi.  According to ICCI the company has no offices,

---

[2]     *See* Contract Labor Agreement dated March 28, 2005, Exhibit A to Benitez's Response, and Contract Labor Agreement dated September 14, 2005, Exhibit A to ICCI's Motion and Exhibit B to Benitez's Response.

[3]     Benitez Drywall, LLC, Ruben Benitez, and Hoguer Benitez (collectively, "Benitez").

employees or work in the State of Texas, and has never recruited workers from Texas.[4]

ICCI's chief financial officer further avers that Benitez approached ICCI in Gulfport,

Mississippi and "requested to be provided subcontract work"[5] in Mississippi shortly

after Hurricane Katrina.[6] The parties entered into contracts on March 28, 2005, and

September 14, 2005, for Benitez to supply workers to ICCI.[7] All the employees' work

was in Mississippi.[8]

Benitez relies on evidence it presents that ICCI Vice President Denny Freeman

or his foreman "frequently called Benitez to request additional Texas construction

employees"[9]; that the employees were from Texas[10]; that Ruben Benitez personally

_____

[4]     Affidavit of Babs Box ("Box Affidavit"), Exhibit C to ICCI's Motion, at 1-2, ¶¶ 3-5.

[5]     *Id.* at 2, ¶ 8

[6]     ICCI Memorandum [Doc. #25], at 2.

[7]     *See* Contract Labor Agreement dated March 28, 2005, Exhibit A to Benitez's Response, and
        Contract Labor Agreement dated September 14, 2005, Exhibit A to ICCI's Motion and
        Exhibit B to Benitez's Response.

[8]     Box Affidavit, at 2, ¶ 9. ICCI also contends that "the agreement was entered into and signed
        in Gulfport, Mississippi."  *See* ICCI Memorandum, at 2.  However, there is no evidence to
        support this precise statement.  It is noted that ICCI's signature was notarized by a
        Mississippi notary on the contract. *See* Contract Labor Agreement dated March 28, 2005,
        Exhibit A to Benitez's Response, and Contract Labor Agreement dated September 14, 2005,
        Exhibit A to ICCI's Motion and Exhibit B to Benitez's Response.

[9]     Defendant's Response [Doc. #28], at 3 (citing cell phone bill, Benitez's Response Exhibit E);
        Affidavit of Ruben Benitez ("Benitez Affidavit"), at 2, ¶ 7.

[10]    *See* Benitez Affidavit, at 1, ¶ 3.

received calls from ICCI's Freeman on at least two occasions, received ICCI's phone calls to Benitez's office manager, and received email from ICCI's Freeman[11]; that the employees, while working in Mississippi, filled out daily ICCI time sheets[12] which ICCI faxed to Benitez in Houston several times a month[13]; that Benitez then prepared in Houston a "Subcontractor's Application for Payment" which it sent by Federal Express to ICCI's offices in Mississippi[14]; that ICCI, upon receipt of this documentation, sent payment to Benitez in Texas[15]; and that ICCI faxed various other correspondence to Benitez in Houston, such as documents concerning insurance required by the contracts.[16]

---

[11]     *Id.* at 2, ¶¶ 7, 10.

[12]     *See* "Daily Sign in Sheets," Exhibit F to Benitez's Response, and Benitez Affidavit, ¶ 8. Benitez states also that the time sheets were "reviewed, modified, and certified by ICCI corporate employee Mr. Larry Burke." Benitez's Response, at 3.  While there is no clear evidence of this fact, the Court notes that there are large handwritten initials that appear to be "LB" on each page of employee time records.  *See* Exhibit F to Benitez's Response. Those markings may well be the source of this representation by Benitez, and facsimile correspondence from "Larry" at ICCI to Benitez, *see* Exhibit G to Benitez's Response.

[13]     Benitez Affidavit, at 2, ¶ 8.

[14]     *Id.* at 2, ¶ 8.

[15]     *Id.* at 2, ¶ 9.

[16]     *See id.* at 2, ¶ 10; Fax correspondence, dated Sept. 14, 2005, from "Larry" at ICCI to "Dora" at Benitez, Benitez's Response, Exhibit G.

## II.    PERSONAL JURISDICTION LEGAL STANDARDS

Benitez asserts both a federal claim under FLSA (Count One) and a Texas state law claim for "equitable contribution" (Count Two) against ICCI.  In response to a challenge to a court's personal jurisdiction over a nonresident defendant, the plaintiff bears the burden of establishing that the court has jurisdiction.  *See Luv n' care, Ltd. v. Insta-Mix*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  The Court must accept as true the party's uncontroverted allegations and resolve any factual conflicts in favor of the party seeking to invoke the Court's jurisdiction.  *Central Freight Lines Inc. v. APA Transp. Corp.,* 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. Ltd. v. Atlas Copco A.B.,* 205 F.3d 208, 214 (5th Cir. 2000); *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000).  The law, however, does not require the Court to credit conclusory allegations, even if uncontroverted.  *Panda Brandywine v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction is required only to present facts sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy its burden.  *See Central Freight Lines,* 322 F.3d at 380; *Alpine View*, 205 F.3d

at 214; *Brown v. Slenker*, 220 F.3d 411, 417 (5th Cir. 2000). The plaintiff need not

establish jurisdiction by a preponderance of the evidence. *Luv n' care,* 438 F.3d at

469.

In deciding whether to exercise specific personal jurisdiction over an out-of-state

defendant in a federal question case, the court must look first to the service-of-process

provisions of the federal statute from which the case arises. *See Alpine View,* 205 F.3d

at 214 (citing FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1))*; Aviles v. Kunkle*, 978 F.2d 201,

204 (5th Cir. 1992). When the federal statute is silent, then the reach of a federal

court's personal jurisdiction is coterminous with the reach of state law. *Aviles*, 978

F.2d at 203-04. FLSA does not address the scope of personal jurisdiction and thus the

Court must look to the Texas long-arm statute. *See id*. at 201.

The Texas long-arm statute "authorizes the exercise of jurisdiction over

nonresidents 'doing business' in Texas." *Gundle Lining Constr. v. Adams County

Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996); TEX. CIV. PRAC. & REM. CODE §

17.042 (1997). "The Texas Supreme Court has interpreted the 'doing business'

requirement broadly, allowing the long-arm statute to reach as far as the federal

Constitution permits." *Gundle,* 85 F.3d 201, 204; *see Alpine View*, 205 F.3d at 214,

*Panda Brandywine Corp.*, 253 F.3d 865, 867 (5th Cir. 2001); *see also R&B Falcon*

*Drilling (Int'l & Deepwater), Inc. v. Noble Denton Group*, 91 Fed. Appx. 317 (5th Cir. 2004); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).[17]

Thus, regardless of whether Benitez's claims are based on a federal statute (FLSA) or Texas state law (contribution), the Court analyzes the exercise of personal jurisdiction over nonresidents with reference to federal constitutional limits, and specifically the Fourteenth Amendment due process requirements. *Gundle*, 85 F.3d at 204 (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.10 (1982)) (restriction on state power to subject a nonresident to suit is "ultimately a function of the individual liberty interest preserved by the Due Process Clause"); *see Smirch v. Allied Shipyard, Inc.*, 164 F. Supp. 2d 903, 906 (S.D. Tex. 2001).

---

[17]    The Texas long-arm statute provides:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1)    contracts by mail or otherwise with a Texas resident and either party is to perform the  contract in whole or in part in this state;
>
> (2)    commits a tort in whole or in part in this state; or
>
> (3)    recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042 (1997).

The two-part test for assertion of personal jurisdiction under the due process clause is (1) whether a defendant "purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' within the forum state," and (2) whether the assertion of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *Alpine View,* 205 F.3d at 215; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).  Both prongs of the due process test must be met in order for this Court to exercise personal jurisdiction over the defendant.

The Court will discuss the application of these factors with reference to the facts presented in the record.

## III.   DISCUSSION

### A.   Minimum Contacts

#### 1.   Legal Requirements

The Court turns first to whether the Texas long-arm statute reaches ICCI under the facts presented.  Because the Texas statute extends specific personal jurisdiction to the permissible bounds of the Constitution the Court only looks at the scope of the Fourteenth Amendment.  *See Gundle*, 85 F.3d at 204; *Schlobohm,* 784 S.W.2d at 357.

Minimum contacts may be established through actions by the defendant that demonstrate either specific or general jurisdiction, depending on the plaintiff's

allegations.  *See Luv n' care*, 438 F.3d at 469; *Alpine View*, 205 F.3d at 215 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).  Specific jurisdiction exists "when a controversy is related to or 'arises out of' a defendant's contacts with the forum . . . [;] a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction." *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  General jurisdiction arises when the defendant maintains "continuous and systematic contacts" with the forum state that are unrelated to the plaintiff's cause of action.  *Alpine View*, 205 F.3d at 215 (citing *Helicopteros*, 466 U.S. at 415-16). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Alpine View*, 205 F.3d at 217 (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)).  For the purposes of this case the Court assesses the existence of specific personal jurisdiction.

To conclude that a defendant should "reasonably anticipate" being haled into the forum state requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws" or "purposefully directs" its efforts toward the forum state. *Panda Brandywine*, 253 F.3d at 869 (quoting *Burger King,* 471 U.S. at 475-76).

"Specific jurisdiction" may arise without the nonresident defendant's ever stepping foot into the state. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990); *see Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (finding federal question personal jurisdiction under a federal securities claim); *Smirch,* 164 F. Supp. at 906.

Purposefulness has been defined as either an intentional or purposeful availment of the forum state or contacts created knowingly even if not with a clear intent to do so. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 111 (1987). The Fifth Circuit has subscribed to the knowledge standard of purposeful availment. "This court has consistently held that 'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction. . . .'" *Luv n' care*, 438 F.3d at 470 (quoting *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993)).

In analyzing minimum contacts, it is not the number but rather the quality and nature of the nonresident's contact with the forum that is important. *See Burger King*, 471 U.S. at 474-75. A defendant's single intentional act directed to the forum can be sufficient to confer personal jurisdiction "if that act gives rise to the claim being asserted." *See Lewis*, 252 F.3d at 358-59.

## 2.    Analysis of Minimum Contacts

As noted above, minimum contacts are established through purposeful availment of the forum state by knowingly taking advantage of the forum state's laws and

protection.    Regardless of whether Benitez's claims are deemed arising under FLSA, a federal statute,  or under Texas state law, the Court holds that Benitez has made a *prima facie* showing of specific jurisdiction over ICCI because ICCI purposefully availed itself of the privilege of conducting activities in Texas.    ICCI invoked the benefits and protections of its laws, and should have reasonably anticipated being haled into court here.    *See generally Luv n' care*, 438 F.3d at 469-70 (citing *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).    As to Benitez's FLSA claim, the issues center on payment – or lack thereof –  of overtime wages to the workers employed by Benitez and possibly ICCI.    The numerous workers that Benitez provided to ICCI were Texas residents, and there is circumstantial evidence that ICCI knew it.[18]    ICCI repeatedly directed phone call, faxes, and Federal Express communications for more than a year to Benitez to obtain dozens of employees and to implement the parties' contracts.    These communications related to the employees' work, the paperwork necessary for Benitez to pay the employees, and confirmation that Benitez (while in Texas) had obtained the necessary insurance and complied with applicable state and federal laws.    This is particularly relevant in the context of a FLSA claim whereby the plaintiff asserts that the payments and compliance that the various

---

[18]    The fact that neither the Contract nor ICCI required that the workers be Texans is not dispositive.

communications purported to arrange did not take place.  These same communications are the foundation for the state law contribution claim that Benitez asserts against ICCI.

ICCI relies on *Aviles*, 978 F.2d at 203, in which Texas migrant workers sued their Ohio employer in Texas federal court for violation of Seasonal Agricultural Protection Act and the FLSA.  Reversing the District Court's finding of personal jurisdiction over the Ohio farmers, the court of appeals stated that:

> In the case at bar . . . plaintiffs' cause of action is not based upon any contract, tort, or recruitment in Texas, but upon the alleged violation of two federal statutes arising solely out of [the plaintiffs'] employment in Ohio.  Therefore, specific jurisdiction may not be founded on [either specific or general jurisdiction] bases.

*Id*. at 204.  In *Aviles*, there were only two communications between the defendant and the Texas workers, *id.*, and they were not at the heart of the claims asserted. Here, ICCI's contacts with Benitez in the State of Texas were numerous, substantive, and pertinent to Benitez's claims against ICCI.  *See and compare Astorga v. Connleaf, Inc.,* 962 F. Supp. 93 (W.D. Tex. 1996) (personal jurisdiction found to exist over defendant, a Texas corporation, that recruited Texas workers to perform work for the defendant in Massachusetts and had other contacts with Texas).  ICCI contracted for Benitez to perform necessary and important work in Texas orchestrating ICCI's staffing in Mississippi.  ICCI also assisted Benitez in performing these functions by

repeatedly providing the required paperwork so the amount of pay each employee was owed could be determined.

ICCI also relies on *Patterson v. Dietze, Inc.*, 764 F.2d 1145 (5th Cir. 1985), for the proposition that "mere fortuity" of the defendant's location is not enough to sustain personal jurisdiction.[19]   *Patterson* is not controlling or persuasive authority under the facts presented here.   The *Patterson* defendant was a New York corporation and the plaintiff was a Texas corporation.   *See* 764 F.2d at 1146.   Both contracted to provide services to a foreign corporation in Mexico and no performance was required in Texas. *Id.* at 1147.   Here, in contrast, ICCI asked Benitez to recruit, hire, and pay workers, whom ICCI understood would likely be Texas residents.   ICCI knowingly and intentionally engaged Benitez to arrange for payment of the employees after processing the necessary paperwork, to ensure that the payroll taxes were collected and paid, to manage employee benefits and welfare plans, to give written notice to the compensation carrier, and to do pre-employment drug testing, all while Benitez was in Texas.   *See, e.g.,* Contract dated September 14, 2005, Exhibit A to Motion, at 1-2. Moreover, ICCI actively communicated with Benitez in Texas regarding the ongoing work.   These contacts with Texas were not merely "fortuitous" as in *Patterson*.

---

[19]     ICCI Rebuttal Memorandum [Doc. #36], at 3.

Benitez has made a *prima facie* showing of ICCI's minimum contacts with Texas through purposeful availment of the rights and opportunities in Texas.

### B.   Fair Play and Substantial Justice: Balancing of Interests

Even if minimum contacts exist, the exercise of personal jurisdiction over a non-resident defendant will not satisfy due process requirements if the assertion of jurisdiction offends "traditional notions of fair play and substantial justice." *Burger King*, 471 U.S. at 476-77; *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Allred v. Moore & Peterson*, 117 F.3d 278, 285 (5th Cir. 1997). In evaluating this fundamental fairness issue, the Court must examine: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental social policies. *See Wien Air Alaska*, 195 F.3d at 215 (citing *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993)). The Court concludes that it is not fundamentally unfair for Benitez and ICCI to proceed with the third-party claims in this district.[20]

**Burden on Defendant:**   ICCI argues that it would be burdensome for it to defend a case in Texas because it has no officers or offices in the state. The absence of officers or offices in a state is not dispositive with respect to the balancing of

---

[20]     This is not a ruling on proper venue or on the merits of Benitez's claims against ICCI.

interests. *See Central Freight Lines,* 322 F.3d 376, 385 (5th Cir. 2003) (finding that the burden on a New Jersey company in having to send executives and attorneys to Texas was completely outweighed by the other interests at play). ICCI has not shown how the burden imposed on it by requiring it to defend a suit in Texas, where it obtained and allegedly participated in paying its workers would offend traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. 462 (1985).

**The Forum State's Interests:** Texas has a considerable interest in ensuring that its workers are treated equitably and receive appropriate compensation for their work, in providing avenues of redress for worker-related violations, and in the enforcement of its long-arm statute regarding the recruitment of Texas residents for out-of-state employment. *See Sarmiento v. Producer's Gin of Waterproof, Inc.* 439 F. Supp. 2d 725, 725 (S.D. Tex. 2006) (finding personal jurisdiction where migrant Texas resident brought action against Louisiana employer for violations of the Migrant and Seasonal Worker Protection Act). Texas has an interest in ensuring that out-of-state corporations do not take advantage of Texas residents by employing them out-of-state through Texas employment service companies and then failing to compensate workers as required by FLSA.[21]

---

[21]     ICCI argues that suits for indemnification cannot be maintained against third parties in FLSA cases. ICCI's Reply [Doc. # 36], at 5-6, citing *LeCompte v. Chrysler Credit Corp.*, 780 F.2d (continued...)

**The Plaintiff's Interest in Convenient and Effective Relief:**  Benitez's contention is that ICCI should be held, at the least, jointly liable for any FLSA violations which have allegedly occurred.  Benitez has a considerable interest in resolving all issues arising from the Secretary's suit in one forum.

**The Judicial System's Interest in Efficient Resolution of Controversies:** Similarly, the judicial system has an interest in efficient resolution of controversies. Extending personal jurisdiction to ICCI may permit complete resolution of FLSA claims asserted by the Secretary of Labor on behalf of Texas residents regarding their work in Mississippi.  *See Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 814 (5th Cir. 2006) (forum's interests would be advanced by extending jurisdiction to an out-of-state defendant because it would "efficiently resolve the complaints of an entire class of appellants").  Defendant Benitez, the affected workers, as well as key records pertaining to the workers' employment with ICCI, are all in Texas.[22]

**The States' Shared Interest in Furthering Fundamental Social Policies:** The Court considers the states' shared interests in furthering fundamental social policies.

---

[21]    (...continued)
1260 (5th Cir. 1986).  *LeCompte* is inapposite.  There, the employer-defendant attempted to obtain indemnification from its own managers, not from an independent entity on a joint employer theory.

[22]    The Secretary's representatives who have worked on and filed this case are also here, although the Court does not rely on this fact.

Allowing personal jurisdiction over ICCI does not contravene any fundamental social policies. If anything, allowing Benitez's third party claim to proceed here supports the social policy of fair remuneration and the appropriate treatment of out-of-state workers. *See, e.g., D.P. Solutions, Inc. v. Rollins, Inc.*, 34 Fed. Appx. 150 (5th Cir. 2002).

Thus, assertion of specific personal jurisdiction over ICCI in this case does not violate ICCI's Fourteenth Amendment due process rights. The Court has personal jurisdiction over ICCI.

## IV.   FORUM SELECTION CLAUSE AND VENUE

There is a separate issue in this case as to whether the forum selection clause, ¶ 15 in each of the parties' two Contract Labor Agreements, mandates that venue for Benitez's claims is proper only in Mississippi and waives the right to object to any other venue.

Parties may designate by contract a forum to litigate disputes. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991). The purpose of enforcing forum selection clauses is to encourage parties to honor their contractual obligations and to promote the use of forum selection clauses to spare the time and expense of determining the proper forum for disputes. *ABC Rental System, Inc. v. Colortyme, Inc.*, 893 F. Supp. 636, 638 (E.D. Tex. 1995) (citing *Carnival Cruise Lines*, 499 U.S. at 594). Forum selection clauses are presumptively valid. *See Carnival Cruise Lines*,

499 U.S. at 595; *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997).  Although a party seeking to change venue normally bears the burden of demonstrating that the change was justified, a "forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *see Carnival Cruise Lines*, 499 U.S. at 595; *see also Int'l Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (1996); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998).[23]

First, there must be an analysis of whether the parties' contract clause applies to the dispute between Benitez and ICCI and if so, then the challenger must "make a 'strong showing' that the clause is unreasonable." *Marinechance Shipping*, 143 F.3d at 220.  Factors to consider when determining whether a forum selection clause is unreasonable include:

•   Whether the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching;

---

[23]   Under Texas law, enforcement of forum selection clauses is mandatory unless enforcement of the clause would be unreasonable or unjust, or the clause is otherwise invalid.  *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005).

- Whether the party seeking to escape enforcement will for all practical purpose be deprived of his day in court because of grave inconvenience or unfairness of the selected forum;

- Whether the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy;

- Whether the enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*See Haynesworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines,* 499 U.S. at 585).

The parties therefore are directed to submit on or before **March 27, 2007,** memoranda of law and other pertinent materials addressing the forum selection clause and venue on the third-party claims.  Responses are due **April 17, 2007,** and replies are due **April 24, 2007**.

## IV.  CONCLUSION AND ORDER

Defendant Benitez has made a *prima facie* showing that the Court has personal jurisdiction over ICCI and that the mandates of the Fourteenth Amendment are met. It is therefore

**ORDERED** that ICCI's Motion to Dismiss for Lack of Jurisdiction [Doc. # 24] is **DENIED**.

SIGNED at Houston, Texas this **12th** day of **March, 2007**.


Nancy F. Atlas
United States District Judge